UNITED STATES of America, Appellee,

v.

Kipp Michael McGEEHAN, Appellant.

UNITED STATES of America, Appellee,

v.

Timothy Steven JOVANOVIC,
Appellant.

Nos. 86–2202, 87–1114.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1987.

Decided July 29, 1987.

Rehearing and Rehearing En Banc
Denied in No. 87–1114 Sept. 24, 1987.

Lee T. Lawless, St. Louis, Mo., for appellant McGeehan and John Blackman for appellant Jovanovic.

Frederick Dana, Asst. U.S. Atty., St. Louis, Mo., for appellee U.S.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

HENLEY, Senior Circuit Judge.

Defendant Timothy Steven Jovanovic pleaded guilty to two counts of distributing lysergic acid diethylamide (LSD) in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute LSD. 21 U.S.C. § 846. Jovanovic now seeks to withdraw his plea, claiming the district court did not

properly advise him of the consequences of his plea. *See* Fed.R.Crim.P. 11(c)(1).

Defendant Kipp Michael McGeehan was indicted on two counts of distributing LSD and one count of conspiracy to distribute LSD. Following a jury trial McGeehan was acquitted of the conspiracy count, but convicted on the two distribution counts. On appeal McGeehan raises two claims of error: (1) the government failed to prove an element of the distributing counts charged in the indictment; and (2) the evidence established that he was entrapped as a matter of law.

## I. JOVANOVIC'S GUILTY PLEA

■ Jovanovic was charged in the indictment with two counts of distributing LSD together with one count of conspiracy. Both counts alleged each distribution to be in excess of five grams and a violation of 21 U.S.C. § 841(a)(1). The first count alleged the distribution involved approximately 1,000 dosage units of LSD while the second count alleged approximately 5,000 dosage units. Section 841 is divided into two parts: unlawful acts and penalties. Under the first portion of § 841 it is a crime to "knowingly or intentionally ... distribute ... a controlled substance...." § 841(a)(1). LSD is a Schedule I controlled substance. 21 U.S.C. § 812(c), Schedule I(c)(9).[1]

The penalty provisions of § 841 are complex and have been subject to numerous legislative revisions. The range of penalties available turns on several factors: the controlled substance involved, the amount of the substance, and any prior convictions for an offense punishable under § 841. The only factor relevant to this appeal is the amount of the controlled substance. If Jovanovic distributed five grams or more of LSD he could be sentenced to not more than twenty years imprisonment and/or a fine of not more than $250,000.00. § 841(b)(1)(A) (Supp. III 1982). For an offense involving less than five grams of

LSD the maximum penalty is not more than fifteen years imprisonment and/or a fine of not more than $125,000.00 together with a mandatory special parole term of at least three years. § 841(b)(1)(B) (Supp. III 1982). The conspiracy statute adopted the maximum penalties provided for in the underlying offense. § 846. Accordingly, if convicted, Jovanovic faced a maximum penalty of sixty years imprisonment and $750,000.00 in fines.

On June 13, 1986 Jovanovic was arraigned and pleaded not guilty to the three counts against him. He was released on bond. On Friday, August 15, 1986 the district court revoked Jovanovic's bond and ordered him confined pending trial because he violated the conditions of his release by using controlled substances during his release. During the weekend Jovanovic decided to change his plea to guilty. The following Monday Jovanovic appeared in court to enter his plea. Jovanovic now contends that the district court incorrectly informed him of the maximum possible penalty and he should therefore be allowed to plead anew.

In order to understand precisely what transpired, a lengthy reference to the change of plea colloquy is necessary.

THE COURT: ... With regard to Count I [conspiracy] ... [do] you understand on Count I, I can fine ... you up to $250,000 and order ... you to spend up to 20 years in jail, or [both] ...?

JOVANOVIC: Yes.

. . . .

THE COURT: With regard to Counts VIII and X [distribution counts] do you understand that I can fine you up to $250,000 on each of those counts and I can likewise incarcerate you for up to 20 years on each of those counts, plus a 3 year minimum special parole term ...?

JOVANOVIC: Yes, sir.

. . . .

THE COURT: So that the jail term on Jovanovic, the maximum—I am sure you

---

1. Jovanovic contends that the reference in the indictment to LSD being "a Schedule I *narcotic* controlled substance" (emphasis supplied) was misleading. LSD is not by definition a "narcot-

ic drug." 21 U.S.C. § 802(17). This mischaracterization is irrelevant in light of the definitive allegation of the drug involved as "lysergic acid diethylamide ("LSD")."

have added it a few times—is what, 60 years?

DEFENSE ATTORNEY: Yes, sir.

THE COURT: Three years special parole term minimum and $750,000 in fines; is that right ...?

U.S. ATTORNEY: I get 50, Your Honor.

THE COURT: 50 what?

U.S. ATTORNEY: 50 years. 15 and 15 plus 30 and plus 20.

. . . .

THE COURT: VIII and IX, at least down here they got 20 years.

DEFENSE ATTORNEY: It should be 15.

U.S. ATTORNEY: That's an error. It should be 15.

THE COURT: That's an error and it's an important error. So we have a total possible for Mr. Jovanovic of 50 years, is that right, Mr. Jovanovic?

JOVANOVIC: Yes, sir.

THE COURT: The fine we talked about is $750,000 and 3 year minimum special parole term ...?

DEFENSE ATTORNEY: That's correct.

THE COURT: Mr. [U.S. Attorney]?

U.S. ATTORNEY: That's correct.

THE COURT: And Mr. Jovanovic?

JOVANOVIC: Yes.

U.S. ATTORNEY: Your Honor, let me correct that. With regard to the 5000 count, Count X, which is a 5000 dosage unit, I believe that calls for 20 years. *There is an enhanced penalty based upon the number of grams.*

. . . .

So it would be 20, 15 and 20.

THE COURT: So X is different from VIII?

U.S. ATTORNEY: I believe it is....

. . . .

U.S. ATTORNEY: Judge ... Roman Numeral IV is the enhanced penalty provision with regard to LSD, based on the number of grams.

Should a defendant be convicted of 5 grams or more, possession or distribution, the enhanced penalty is 20 years instead of 15. We have that situation here with regard to Count X.

. . . .

THE COURT: So you are saying instead of a total for Mr. Jovanovic would be 55 years, not 50 years?

U.S. ATTORNEY: That's right.

[At this point the district court directs the defendant's attorney to discuss with Mr. Jovanovic what had transpired to determine if it would affect his decision to plead guilty.]

DEFENSE ATTORNEY: Judge, I conferred with Mr. Jovanovic and it makes no difference to the plea.

THE COURT: You know what we are talking about here, Mr. Jovanovic?

JOVANOVIC: Yes.

THE COURT: It's a total ... [of] 55 years jail time that can conceivably be assessed by me against you under the statutes that apply to your plea here today, you know that and you want to go ahead, do you?

JOVANOVIC: Yes, sir.

■ Undoubtedly, this exchange regarding the maximum allowable sentence is confusing. Ultimately, a maximum term of imprisonment of 55 years is arrived at because the United States conceded that only one of the distribution counts is subject to an enhanced penalty.[2] Thus, the district court ultimately advised Jovanovic correctly of the maximum available prison term.

■ At the outset the district court advised Jovanovic that he was also subject to a mandatory minimum three year special parole term. This was incorrect. Under

**2.** Simple possession of LSD (*i.e.,* less than 5 grams) is a lesser included offense when distribution of 5 or more grams is charged. *See United States v. Alvarez,* 735 F.2d 461, 466–67 (11th Cir.1984); *see also United States v. Barket,* 530 F.2d 181, 187 (8th Cir.1975), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976) ("One offense is a lesser included offense of another only if, in order to commit the greater offense, it is necessary to commit the lesser."). A lesser included offense need not be charged in an indictment, as it is already included in the offense charged. *United States v. Martel,* 792 F.2d 630, 638 (7th Cir.1986).

the enhanced penalty provision Jovanovic was not subject to special parole. 21 U.S.C. § 841(b)(1)(A) (Supp. III 1982). However, upon the government's concession that Count VIII did not involve in excess of five grams as charged in the indictment, Jovanovic became subject to a mandatory three year minimum special parole term under the lesser included offense of distribution of less than five grams. § 841(b)(1)(B) (Supp. III 1982). We note, however, that the district court did not inform Jovanovic that the special parole term could be a life term.

"Before accepting a plea of guilty ... the court must ... inform the defendant of, and determine that the defendant understands ... the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term...." Fed.R.Crim.P. 11(c). Formerly, the requirements of Rule 11 were to be strictly adhered to and any deviation therefrom would require reversal and remand to allow the defendant to plead anew. *McCarthy v. United States*, 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418 (1969). Subsequently, the Supreme Court concluded that a failure to strictly comply with Rule 11 would not warrant habeas relief unless it results in a complete miscarriage of justice or is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). Thus, *Timmreck* tends to undercut the proposition underlying the automatic reversal rule of *McCarthy* "that prejudice inheres in a failure to comply with Rule 11...." *McCarthy*, 394 U.S. at 471, 89 S.Ct. at 1173. *See* Comment, *Rule 11 of the Federal Rules of Criminal Procedure: A New "Strict in Context" Approach*, 22 B.C.L.Rev. 815, 834 n. 140 (1981). Therefore, it was arguable that some deviations from Rule 11 may be merely harmless er-

ror. *See United States v. Dayton*, 604 F.2d 931, 939–40 (5th Cir.1979).

In 1983 Rule 11 was amended to include a harmless error provision:

**Harmless Error.** Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

Fed.R.Crim.P. 11(h). This amendment has been criticized for failing to adequately define harmless error. Comment, *supra*, 22 B.C.L.Rev. at 841–42. It is not unusual, however, for the task of refining and giving meaning to a broad standard to be left to the courts. In any event, to resolve the question of whether the error here was harmless we need look no farther than the Advisory Committee's Notes. It is harmless error "where the judge's compliance with subdivision (c)(2)[sic] was erroneous in part in that the judge understated the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings...." Fed.R.Crim.P. 11(h) Advisory Committee's note, 1983 amendment. The sentence actually imposed on Jovanovic did not exceed the varying amount he was told he could receive.[3] Accordingly, any error was harmless.

## II. KIPP MICHAEL McGEEHAN

Defendant McGeehan was indicted on the same three counts as Jovanovic. McGeehan entered a plea of innocent to all three counts and a jury trial was held. At the close of the government's evidence McGeehan filed a written motion for acquittal alleging that the evidence was insufficient to support a conviction. McGeehan argues that the government failed to prove he distributed five or more grams of LSD. The government's evidence regarding the amount of LSD involved in Count VIII (1,000 dosage units) was that the gross weight was 2.25 grams and the net weight was 0.018 grams.[4] For Count X (5,000

---

3. Essentially, the primary problem was the fluctuation in the maximum available prison sentence from 50 to 60 years. Jovanovic was ultimately sentenced to two concurrent nine-year terms of imprisonment, followed by a three-year special parole term, followed by a five-year

probation term and a ten-year suspended sentence of imprisonment.

4. By net weight we mean the actual amount of LSD. Gross weight refers to the LSD plus the carrier medium. LSD is ingested in extremely

dosage units) the gross weight of LSD plus carrier was 16.37 grams, the net weight of LSD was 0.195 grams.[5]

The district court denied McGeehan's motion for acquittal and concluded that the amount of LSD involved was an issue to be determined at sentencing and was not an element of the offense to be determined by the jury. Accordingly, the jury was instructed that it only had to find that a measurable amount of LSD was involved. Defendant did not object to this instruction. Indeed, he requested an amended instruction that stated "the actual amount need not be proved." The jury acquitted McGeehan on the conspiracy charge but convicted him on the two distribution counts.

At sentencing the district court made no finding regarding the amount of LSD. McGeehan was sentenced to five years imprisonment on Count VIII and ten years of imprisonment (execution suspended) and five years probation on Count X. No special parole term was imposed. *See* 21 U.S.C. § 841(b)(1)(B) (Supp. III 1982) (mandatory three-year special parole term if less than five grams of LSD is involved). McGeehan argues that the evidence failed to show he distributed five grams or more of LSD. The government contends that the weight of the carrier must also be included and the combined weight did exceed five grams.[6]

■ The statute under which McGeehan was sentenced plainly states "5 grams or more of lysergic acide diethylamide (LSD)...." 21 U.S.C. § 841(b)(1)(A)(iv) (Supp. III 1982). This suggests that only the weight of the LSD is to be considered. This conclusion is further buttressed by the current version of this section which reads, "10 grams or more of a mixture or substance containing a detectable amount of

lysergic acid diethylamide (LSD)...." § 841(b)(1)(A)(v). This subsequent amendment demonstrates that Congress was aware of the difference between LSD and LSD combined with a carrier substance. Finally, the legislative history demonstrates that the reference to five grams meant only the LSD, not the combined weight.

> Under paragraph (b)(1), the most serious penalties under this section ... apply when the controlled substance involved in the offense is listed under Schedules I or II and is a kilogram or more of a narcotic drug other than an opiate or is 500 grams or more of phencyclidine (PCP) or 5 grams or more of lysergic acid diethylamide (LSD). This grading makes appropriate distinctions between large and casual traffickers—drawing the dividing line with respect to cocaine, PCP, and LSD at approximately *100,000 times the average user dosage....*

S.Rep. No. 307, 97th Cong., 1st Sess. 868 (1981) (cited with approval S.Rep. No. 225, 98th Cong., 2d Sess., 255 n. 1, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3437 n. 1) (emphasis supplied). The enhanced sentencing provisions of § 841 were plainly not intended to reach a distributor of 1,000 or even 5,000 dosage units of LSD. Accordingly, because it appears that McGeehan was sentenced under § 841(b)(1)(A) rather than § 841(b)(1)(B), we vacate the sentence imposed on both counts and remand for resentencing. *See Alvarez*, 735 F.2d at 467–68 (where defendant is improperly sentenced under an enhanced penalty provision based on the amount of controlled substance involved, remand for resentencing under the proper provision is appropriate).[7]

McGeehan also contends that he was entrapped as a matter of law and the district

---

small quantities. Accordingly, LSD is commonly adhered to a plastic or gellatin "carrier" which allows the LSD to be divided into the minute quantities of a single dosage unit.

**5.** On cross-examination the government's expert testified that the weight of LSD involved was 0.595 grams. The difference appears to result from a math error. The expert testified that the single dosage strength of LSD in this sample was 39 micrograms (0.000039 grams). Thus,

the total LSD is determined by multiplying the dosage strength by the number of doses in the sample (*i.e.,* 0.000039 g./dose × 5,000 doses). The result is 0.195 grams. For the purpose of this opinion the difference between 0.595 grams and 0.195 grams is irrelevant.

**6.** Even under the government's theory the total weight did not exceed five grams in Count VIII.

**7.** In present circumstances, we need not address the question whether the amount of LSD is an

court erred in not ordering an acquittal. We have carefully reviewed the record and conclude that the issue of entrapment included disputed issues of fact and inferences to be drawn from those facts and was properly left to the jury.

The convictions of defendant Jovanovic are, in all respects, affirmed. The convictions of defendant McGeehan are affirmed; however, the sentence imposed is vacated and the matter remanded to the district court for resentencing.

element of the offense to be determined by the jury, or an issue for the district court at sentencing. *See Mullaney v. Wilbur*, 421 U.S. 684, 696–701, 95 S.Ct. 1881, 1888–90, 44 L.Ed.2d 508 (1974); *United States v. Gibbs*, 813 F.2d 596, 602–03 (3d Cir.1987) (2–1); *id.* at 603–07 (Aldisert, J., dissenting) (discussion of both sides of this issue).