UNITED STATES of America, Plaintiff,

v.

Sidney Wayne BISHOP, Jimmy Steven Jilek, and Jerald James Ayers, Defendants.

No. CR 88-3005.

United States District Court,
N.D. Iowa, C.D.

Feb. 7, 1989.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for plaintiff.

Michael E. Sheehy, Cedar Rapids, Iowa, for defendant Bishop.

Russell H. Schroeder, Jr., Charles City, Iowa, for defendant Jilek.

Stephen A. Swift, Cedar Rapids, Iowa, for defendant Ayers.

MEMORANDUM AND ORDER

HANSEN, District Judge.

The defendants came before the court for sentencing on January 30, 1989, accompanied by their respective counsel, i.e., Michael E. Sheehy, Esq. for the defendant Bishop, Russell Schroeder, Jr., Esq. for the defendant Jilek, and Stephen A. Swift, Esq. for the defendant Ayers. The United States was represented by Paul C. Lillios, Esq., Assistant United States Attorney. All three defendants have been found guilty, either by plea or jury verdict, of Count 7 of the Indictment, which charged them with conspiracy to distribute or possess with the intent to distribute more than

10 grams of lysergic acid diethylamide (LSD) in violation of 21 U.S.C. § 846. Defendants Bishop and Jilek have also been found guilty of other drug violation counts of the Indictment as well. However, for purposes of sentencing under the Sentencing Reform Act of 1984 and the newly promulgated Sentencing Guidelines, all the counts of conviction for the drug offenses are grouped and the base offense is driven by the quantity of controlled substances involved in the relevant offense conduct. Sentencing Guidelines, §§ 1B1.3(a)(2), 2D1.-1(a)(3), 3D1.2(d).

### Findings of Fact

1. The parties have stipulated that, for the purposes of sentencing, Exhibits 15, 16 and 17 (those being the sheets of blotter paper consisting of small perforated squares impregnated with LSD involved in the common conspiracy count and introduced as evidence in the Jilek trial) contain a total of 263 milligrams of LSD. The parties also stipulate that the total weight of the drug impregnated blotter paper in the three exhibits is 19.75 grams. If the offense level is determined by the weight of only the LSD, the base offense level would be a level 18, resulting in a potential guideline sentencing range of 27–33 months for a Category I offender (which all three defendants are). If the base offense level is determined by the gross weight of the LSD *and* the blotter paper used as its carrier medium, then the base offense level increases to a level 32 resulting in a potential sentencing range of 121–151 months for each defendant.

2. The testimony during the Jilek trial indicated that users of LSD either lick the LSD from the tab of blotter paper (dissolving the impregnated LSD with their saliva) or they simply chew and swallow the small square of blotter paper itself containing the absorbed LSD. The method of ingestion of the drug appears to be a matter of the personal preference of the user. What is important is that the blotter paper itself can be and is ingested with the drug much the same as any dilutant or cutting agent would be ingested.

3. At the sentencing hearing, the court ruled from the bench that the total weight of the blotter paper (which contains both the LSD and the paper) was the correct weight to use for sentencing purposes. The purpose of this memorandum and order is to put that decision and the court's reasoning for it of record in the file.

### Conclusions of Law

■ 1. In order to determine whether the gross weight of the blotter paper and the LSD or the weight of the LSD alone is the relevant weight for purposes of sentencing, the court must examine the statute under which defendants are to be sentenced.

### Unlawful Acts

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

### Penalties

(b) Except as otherwise provided in section 845, 845a or 845b of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

....

(v) 10 grams or more *of a mixture or substance containing a detectable amount* of lysergic acid diethylamide (LSD)....

....

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

....

(B) In the case of a violation of subsection (a) of this section involving—

....

(v) 1 gram or more *of a mixture or substance containing a detectable*

*amount* of lysergic acid diethylamide (LSD)....

. . . .

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....

21 U.S.C. § 841 (emphasis added). The plain language of the statute indicates that Congress intended for the penalties imposed upon those convicted of violating 21 U.S.C. § 841(a) to be driven by the quantity of "a mixture or substance containing a detectable amount of [LSD]." 21 U.S.C. § 841(b)(1)(A)(v). The question the court must resolve is whether the blotter paper in which the LSD was dispersed is "a mixture or substance" under the statute. The court finds that the blotter paper, which held the LSD in this case, is a "substance" which contains a detectable amount of LSD. Therefore, the court finds that, under the plain language of the statute under which defendants are to be sentenced, the relevant weight for purposes of determining sentence is the weight of the blotter paper in which the LSD is disbursed.

A further examination of the statute confirms this conclusion. For example, as pointed out by the government, had Congress intended the penalties to be driven by the weight of pure LSD, apart from any mixture or substance in which it might be dispersed, it could have so provided in the statute. In fact, Congress did just that with regard to phencyclidine (PCP). 21 U.S.C. § 841(b)(1)(A)(iv) provides for the imposition of a penalty based upon *either* the quantity of pure PCP *or* the quantity of a "mixture or substance containing a detectable amount" of PCP. *Id.* Thus, Congress provided in one section of the statute for the imposition of penalties in cases involving PCP to be driven by either the quantity of pure PCP or the quantity of a mixture or substance containing a detectable amount of PCP, and in the next subsection of the same statute provided that penalties in cases involving LSD be determined *only* by the quantity of a mixture or substance containing a detectable amount of LSD. Therefore, the court finds that Congress intended for the penalties in cases involved LSD to be driven by the quantity of a mixture or substance containing a detectable amount of LSD and *not* by the quantity of pure LSD. In light of the plain language of the statute, the court need not examine the legislative history. *U.S. v. Wood,* 834 F.2d 1382, 1388 (8th Cir.1987).

The court notes that other cases bolster the conclusion that the relevant weight for purposes of sentencing is the weight of the LSD combined with the weight of its carrier substance. In *U.S. v. McGeehan,* 824 F.2d 677 (8th Cir.1987), the defendant was sentenced under a prior statute.

The statute under which McGeehan was sentenced plainly states "5 grams or more of lysergic acid diethylamide (LSD)...." 21 U.S.C. § 841(b)(1)(A)(iv) (Supp. III 1982). This suggests that only the weight of the LSD is to be considered. This conclusion is further buttressed by the current version of this section which reads, "10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)...." Section 841(b)(1)(A)(iv). This subsequent amendment demonstrates that Congress was aware of the difference between LSD and LSD combined with a carrier substance. Finally, the legislative history demonstrates that the reference to 5 grams meant only the LSD, not the combined weight.

*U.S. v. McGeehan,* 824 F.2d at 681. Thus, the Eighth Circuit Court of Appeals has recognized that the statute under which defendants are sentenced incorporates LSD combined with its carrier substance, in this case blotter paper. *See also U.S. v. Smith,* 840 F.2d 886 (11th Cir.1988) (punishment imposed based upon the weight of the mixture containing a cocaine base).

■ 2. The defendants argue that, for guideline sentencing purposes, the dosage equivalent table found on page 2.45 of the

Guidelines Manual promulgated by the United States Sentencing Commission should be used to determine the appropriate amount of LSD in this case. That table reveals that one dose of LSD is equal to 0.1 milligrams of LSD. The defendants argue that since this case involves approximately 2,630 individual "tabs" of LSD (each perforated square on a sheet being a single dose or "tab" or "hit" of the drug), the proper amount of the drug for sentencing purposes under the Guidelines is arrived at by multiplying the 2,630 doses times 0.1 milligrams per dose for a total amount of LSD of 263 milligrams (0.263 grams).

The preface to the drug dosage equivalent table reads as follows:

The following dosage equivalents for certain common drugs are provided by the Drug Enforcement Administration to facilitate the application of § 2D1.1 of the guidelines in cases where the number of doses, but not the weight of the controlled substances, are known. The dosage equivalents provided in these tables reflect the amount of the pure drug contained in an average dose.

The court does not find the defendants' argument persuasive for two reasons. First, as the statutory discussion above demonstrates, the potential sentence for an LSD violation is not alone determined by the weight of the pure LSD involved. It is the weight of the "mixture or substance containing a detectable amount of LSD" that determines the applicability of the enhanced sentence. Second, the force of the argument based on the preface to the dosage equivalency table has been undercut by a recent publication from the Sentencing Commission. On November 30, 1988, the Commission published a document entitled "Questions Most Frequently Asked About The Sentencing Guidelines." Although the document contains a disclaimer that the information contained in it "does not necessarily represent the official position of the Commission," it does state that it is offered to "assist U.S. probation officers and judges in applying the sentencing guide-lines." Question 29 in that publication is as follows:

29. **QUESTION:** When using the drug table, is the weight of the drug's packaging added in to determine the drug amount?

**ANSWER:** The footnote to the Drug Quantity Table in § 2D1.1 designated by a single asterisk states that total weight of the *controlled substance* is to be used in determining the guideline offense level. (Emphasis in original.) Packaging materials are not per se a controlled substance, and under the drug statutes and the guidelines are not considered to be part of a controlled substance mixture. *With respect to blotter paper or sugar cubes on which LSD or some other controlled substance has been absorbed, the Commission has not addressed the issue and the court may have to make a determination.*

(Emphasis added.)

This is a case where the court must make the determination that the Commission has not yet addressed with respect to LSD impregnated blotter paper, and it has done so.

### ORDER:

Accordingly, It Is Ordered:

For the purposes of sentencing these defendants, the court concludes that under 21 U.S.C. § 841(b)(1)(A)(v), the weight of the substance containing a detectable amount of LSD is 19.75 grams in this case, resulting in a base offense level of 32 for each of the defendants.

DONE AND ORDERED.