**UNITED STATES of America**

v.

**Michael A. HEALY.**

**Cr. No. 89–0177.**

United States District Court,
District of Columbia.

Jan. 18, 1990.

---

Patrice Kopistansky, Asst. U.S. Atty., Washington, D.C., for U.S.

David Reiser, Public Defender Service, Washington, D.C., for defendant Healy.

## SENTENCING MEMORANDUM RE APPLICABLE GUIDELINE RANGE

GESELL, District Judge.

Defendant Michael Healy was convicted of one count of unlawful distribution of LSD for selling 5000 "hits" of LSD impregnated in blotter paper to an undercover police officer. His sentencing has raised two issues involving interpretation of the Federal Sentencing Guidelines. The first concerns the LSD weight to be used in fixing the Guidelines sentence range. The second concerns whether the defendant's alleged reduced mental capacity justifies departure from the Guidelines range. The

first issue has been fully presented and is ripe for decision.

Tracking the language of the federal drug prohibition statute at 21 U.S.C. § 841, the Federal Sentencing Guidelines normally fix sentences for LSD distribution based on the weight not of the pure LSD itself but of the "mixture or substance" containing LSD at issue in each case.[1]

In its pure form, LSD tartrate is a water-soluble crystalline material. The LSD sold by Healy was in the form of liquid impregnated into 5000 squares of blotter paper. The user is expected to place a square in the mouth and eventually swallow the paper along with the drug it carries.

The issue before the Court is whether or not impregnated blotter paper is a "mixture or substance" containing LSD within the meaning of the Guidelines and thus should be weighed in calculating the sentence. The weight of the impregnated squares was 44.133 grams. The weight of the liquid LSD alone was only 125 milligrams. If the blotter paper is included, the Guidelines sentence range is 151 to 188 months. If it is excluded, the applicable range is 21 to 27 months.[2]

Although LSD is sold in various carrier mediums—primarily blotter paper, sugar cubes, gelatin capsules or liquid—courts addressing this issue have indicated that the weight of any LSD carrier medium must be included in fixing Guidelines sentence ranges. *See United States v. Daly,* 883 F.2d 313 (4th Cir.1989) and cases cited

---

1. The "mixture or substance" language is employed in the Guidelines and the statute with respect to many controlled substances, not just LSD.

2. The indictment charged Healy with unlawful distribution of 10 grams or more of a mixture or substance containing LSD, which is punishable by a mandatory minimum sentence of 10 years. 21 U.S.C. § 841(b)(1)(A)(v). However, the count sent to the jury was distribution of LSD without reference to weight, 21 U.S.C. § 841(b)(1)(C), because the Court, while not addressing the issue dealt with in this opinion, ruled that the United States had failed to present sufficient evidence that the material sold by the defendant and weighed by the Drug Enforcement Administration at 44.133 grams did not contain extraneous packaging paper in

addition to the blotter paper impregnated with LSD.

For purposes of sentencing, the United States has presented an affidavit, which defendant does not contest, stating that the material at issue did not contain any extraneous packaging paper, only sheets of blotter paper impregnated with LSD.

The indictment also charged Healy with a second count of distribution of 10 grams or more of a mixture or substance containing LSD based on a separate incident. The Court severed that count from the count tried by its Memorandum and Order of September 14, 1989. The United States has informed the Court that its decision on whether to pursue or to request dismissal of the other count depends on the magnitude of the Court's sentence on the count already tried.

therein. However, the issue has not been resolved in this circuit and, for reasons stated below, the Court is obliged to reach a different result.

The Guidelines state that the phrase "mixture or substance" as used therein "has the same meaning as in 21 U.S.C. § 841." United States Sentencing Commission Guidelines Manual "Guidelines Manual") at 2.46. However, the statutory definitional section applicable to § 841, 21 U.S.C. § 802, does not define "mixture or substance." The Guidelines only provide that "[u]nless otherwise specified, the weight of the controlled substance set forth in the [offense level] table refers to the entire weight of any mixture of substance containing a detectable amount of the controlled substance." Guidelines Manual at 2.45.

Thus the question of whether impregnated blotter paper is a "mixture or substance" containing LSD is left unresolved by the statute and the Guidelines. Indeed, a November 30, 1988, Sentencing Commission publication entitled "Questions Most Frequently Asked About the Sentencing Guidelines" stated that the Commission has not taken a position on the issue of whether blotter paper should be weighed.[3]

Other courts have included blotter paper weight in fixing Guideline sentences because they have considered LSD blotter paper to be equivalent to "cutting agents" used with other controlled substances. *See Daly*, 883 F.2d at 316–18; *United States v. Bishop*, 704 F.Supp. 910, 911 (N.D.Iowa 1989). This approach does not fully address the meaning of the term "mixture or substance containing" LSD. Ordinary accepted English language meanings do not bring impregnated blotter paper within the definition of either "substance" or "mixture."

LSD-impregnated blotter paper is not a "substance." A substance is a "species of matter of a definite chemical composition,"

or "[a]ny particular kind of corporeal matter." 17 *Oxford English Dictionary* 64 (1989). A piece of paper soaked in ink, beer or LSD is not a kind or species of matter.

LSD-impregnated paper also does not appear to be a "mixture." A mixture is "a coexistence of different ingredients or of different groups or classes of things mutually diffused through each other." 9 *Oxford English Dictionary* 921 (1989). In modern physical science, a mixture is the product of "the mechanical mixing of two substances as distinguished from *(chemical) combination....* In a mixture the substances are unchanged...." *Id.* To "mix" is "[t]o put together ... so that the particles or members of each are more or less evenly diffused among those of the rest; to unite .. in this manner *with* another or others; to mingle, blend." *Id.* at 915. There is no proof that when paper is impregnated with LSD the "substances are unchanged" and "more or less evenly diffused."

The phrase a "mixture or substance containing" LSD would have meaning in the Guidelines and statutory contexts even if blotter paper and perhaps certain other carrier mediums are not within the definition; Congress could have intended the term to refer to a liquid into which LSD tartrate has been dissolved.

In addition, a comparison of the LSD overall weight table in the Guidelines with another Guidelines table entitled, "Typical Weight per Unit Table," Guidelines Manual at 2.51, indicates that to the extent the Sentencing Commission has focused on LSD sentences, it has proceeded as if blotter paper is not a "mixture or substance" within the meaning of the Guidelines.

The weight per unit table, according to the Guidelines, is to be used if the number of doses but not the weight of the LSD is known. The table provides that the typical weight of a dose of LSD is .05 milligrams.[4]

---

**3.** According to the Probation Officer, a person answering the Sentencing Commission's telephone "hotline" informed him that LSD blotter paper is to be included in determining drug weight.

**4.** Until November 1, 1989, the table had provided that the typical weight of an LSD dose was .1 milligrams. According to the Sentencing Commission, the purpose of the recent amendment was to provide a more accurate approximation

Application of the facts of this case to the weight per unit table is instructive. The parties agree that the number of doses at issue is 5000. If the LSD weight was unknown and the weight per unit table applicable, use of the table would indicate a weight of 250 milligrams, leading to an offense level of 18 and, given Healy's Criminal History category of I, a sentence of 27 to 33 months.

Because the weight of the drugs is known in this case, the Court must use the overall weight table only and not the weight per unit table. By including the weight of the blotter paper, the total weight—44.133 grams—leads to an offense level of 34 and a sentence range of 151 to 188 months. Without the blotter paper, the only relevant weight is the 125 milligrams of LSD the DEA found on the paper (.025 milligrams per dose), leading to an offense level of 16 and a sentence range of 21 to 27 months. This latter result is far closer to the result that would be obtained using the weight per unit table and provides further indication that the Commission did not intend that courts include blotter paper weight in determining offense levels.

Buttressing this indication is a related judicial finding of congressional intent. In *United States v. McGeehan*, 824 F.2d 677, 681 (8th Cir.1987), the court examined the relationship between the 1981 and 1986 amendments to section 841 and the legislative history and concluded, "The enhanced sentencing provisions of § 841 were not intended to reach a distributor of 1,000 or even *5,000 dosage units* of LSD." *Id.* These enhanced sentences under § 841 apply to defendants who possess or sell more than one gram of a mixture or substance containing LSD. 21 U.S.C. §§ 841(b)(1)(A)(v), 841(b)(1)(B)(v). As noted, if blotter paper is included, the 5000 doses Healy sold weighed more than 44 grams.

It is settled that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), and the same principle is appropriate here when considering the Guidelines, which have the effect of statutory provisions on convicted persons. Thus any ambiguity in the Guidelines with respect to whether LSD-impregnated blotter paper is a "mixture or substance containing" LSD must be resolved in favor of the defendant.

Excluding blotter paper weight also comports with a central goal of the Guidelines as mandated by Congress, namely uniformity in sentencing. Guidelines Manual at 1.2. If the weights of the various LSD carrier mediums—paper, sugar cubes, capsules and liquid—are taken into account, widely divergent sentences may be imposed for sale of identical amounts of a controlled substance. *See Daly*, 883 F.2d at 316–18. It is basically illogical to graduate the severity of LSD sentences based on the weight of these carrier mediums. Graduation of sentences based on market value or number of dosages is far more sensible and fair in that it would punish on the basis of the individual's significance in the drug supply chain or the harm the distribution posed to society.

In this regard, the defendant notes that the minimum amount of cocaine that must be distributed to constitute a Guidelines level 32 offense is 5 kilograms, which, according to a federal government report, had a 1988 wholesale price of between $55,000 and $170,000. National Narcotics Intelligence Consumers Committee, *The NNICC Report 1988: The Supply of Illicit Drugs to the United States* 31 (1989). The minimum amount of LSD for a level 32 offense is 10 grams. Ten grams of the LSD in this case, if the blotter paper is weighed, contains about 1135 doses, which would have a wholesale value of between $397.25 and $1702.50, based on an estimated 1988 wholesale price of 35 cents to $1.50 per dose. *Id.* at 52.[5] Surely the Sentenc-

---

of the typical dosage. Guidelines Manual at C.77. This change indicates that the typical weight figure is one the Commission has recently considered and approved.

5. Healy sold the 5000 doses to the undercover officer for $3600, or 72 cents per dose.

144

ing Commission did not intend that a person caught with $1000 worth of LSD would face the same sentence as one caught with $100,000 worth of cocaine, especially considering the relative impacts of the two drugs.[6]

In sum, the statute and Guidelines do not clearly mandate that LSD blotter paper be weighed. Policy and legal considerations as well as the Sentencing Commission's own formulae suggest that it not be weighed. Accordingly, the Court in this instance will consider only the weight of the liquid LSD, and thus fixes the basic offense level at 16, corresponding to a guideline range of 21 to 27 months imprisonment.

---

**6.** There is evidence that cocaine is a far more harmful drug than LSD. Deaths from cocaine overdoses are rare, but they do occur. T. Cox, M. Jacobs, A. LeBlanc & J. Marshman, *Drugs and Drug Abuse: A Reference Text* 229 (1983). By contrast, the cited text indicates that no deaths from LSD overdose have been reported, *id.* at 313, and, although there have been instances of LSD-induced violence, *id.,* it is cocaine and not LSD that is linked to much of the current street violence in this country. Moreover, while physical and psychological cocaine dependence is known to occur, *id.* at 229–30, physical dependence on LSD is not, and only a small fraction of LSD users become psychologically dependent. *Id.* at 314.